UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------- X

KAREEM ANNUNZIATA,

                Plaintiff,

- against -

THE CITY OF NEW YORK and
DETECTIVE PATRICK M. HENN,
Shield # 06731,

                Defendants.

------------------------------------------------------- X

**OPINION AND ORDER**

06 Civ. 7637 (SAS)

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 9/2/08

**SHIRA A. SCHEINDLIN, U.S.D.J.:**

## I. INTRODUCTION

In August of 2005, Kareem Annunziata was arrested by officers of the New York City Police Department ("NYPD"). After the primary witness recanted at Annunziata's criminal trial, all charges were dismissed. Annunziata then brought this action for false arrest and malicious prosecution against the City and the arresting officers.[1] A jury awarded Annunziata one dollar in compensatory damages and three thousand dollars in punitive damages for his false arrest claim.

---

[1] By Opinion and Order dated May 28, 2008, the Court dismissed all claims against the other officer defendants.

1

The jury found for defendants on plaintiff's malicious prosecution claim. The parties have made a number of post-trial motions. For the following reasons, the Court now sets aside the verdict and orders a new trial.

## II. BACKGROUND

On August 29, 2005, at or about 7:45 p.m., defendant Detective Patrick M. Henn of the NYPD arrested Annunziata in connection with a shooting that had occurred in his vicinity shortly before. The arrest was based on information from a witness, Bruce Mitchell. A young female pedestrian was wounded in the shooting.

At trial, Mitchell, who was sixteen at the time of the incident, testified as follows: On August 29, 2005, he was playing dominoes in his backyard with his friends Jamal, LaPaix, and Ephraim Desty.[2] Around 5 p.m., he heard a motorcycle and an argument from in front of his house.[3] He ran to the front of the house and saw a person named Quan riding a red motorcycle.[4] A woman was on

---

[2] *See* Trial Transcript ("Tr.") at 238:14-23.

[3] *See id.* at 288:3-8.

[4] *See id.* at 240:20-24; 245:10-21; 288:3-4.

2

the back of the motorcycle.[5] Quan was firing a gun.[6] Quan and the woman then got off the motorcycle, possibly because they fell off, and ran away; Desty recovered the motorcycle.[7] They resumed their dominoes game, but shortly thereafter police arrived, handcuffed Mitchell, and searched his home.[8]

Mitchell further stated: Detective Henn and other officers brought Mitchell to the stationhouse and interrogated him, at times using physical force and various threats.[9] Henn told Mitchell that he knew Annunziata was the shooter and made clear that the police wanted his cooperation in closing the case.[10] At Henn's direction, Mitchell signed a false statement that incriminated Annunziata, LaPaix, and Desty.[11]

The next day, Henn and another officer brought Mitchell to court, where he met with an assistant district attorney ("ADA").[12] Mitchell testified at

---

[5] *See id.* at 246:20-22.

[6] *See id.* at 247:25-248:1.

[7] *See id.* at 249:8-25.

[8] *See id.* at 253:1-11.

[9] *See id.* at 256:13-261:10.

[10] *See id.* at 264:1-265:1.

[11] *See id.* at 265:15-24; 312:17-25.

[12] *See id.* at 271:1-14.

3

trial that the ADA threatened to have Mitchell's mother's home seized if he did not cooperate.[13] Mitchell told a grand jury that Annunziata fired the shots, then went into Mitchell's backyard and dropped the firearm in a car.[14] He further told the grand jury that LaPaix and Desty were involved in the shooting. Based in part on his testimony, Annunziata, LaPaix, and Desty were indicted. LaPaix and Desty later pled guilty to attempted assault in the second degree in connection with the shooting.

Annunziata was incarcerated until his arraignment in the Criminal Court of the City of New York, Kings County, at or about 9:30 p.m. on August 30, 2005. Annunziata was incarcerated for between twenty-two and twenty-seven hours. At Annunziata's criminal trial, Mitchell recanted his prior testimony and told the jury that he did not see Annunziata at the scene of the crime.[15] The charges were dropped.

Henn's version of events differed in several key respects. Primarily, Henn denies coercing Mitchell. He testified that at no time did he strike Mitchell or prompt Mitchell to falsely incriminate Annunziata, nor did he insinuate that

---

[13] *See id.* at 272:14-21.

[14] *See id.* at 275:1-2.

[15] *See id.* at 277:4-5.

4

Mitchell would be harmed if he did not incriminate Annunziata.

Henn further testified as follows: Mitchell stated Annunziata and Quan both fired weapons.[16] Mitchell then told Henn that Annunziata went behind Mitchell's house and dropped a firearm into a vehicle.[17] Henn learned that a firearm had been recovered from a vehicle in the backyard of Mitchell's home.[18]

Annunziata brought this action against the City and against the arresting officers, alleging false arrest, malicious prosecution, and violation of his civil rights pursuant to section 1983 of Title 42 of the United States Code. At trial, the jury found that Henn lacked probable cause to arrest Annunziata but Annunziata had suffered no damages.[19] They therefore awarded him one dollar in nominal damages. The jury further found that there was probable cause to prosecute Annunziata.[20] After returning this verdict, the jury was dismissed. Several days later, the jury was reconvened and charged on the question of punitive damages and returned a verdict of three thousand dollars.

---

[16] *See id.* at 138:24-139:5.

[17] *See id.* at 140:20-24.

[18] *See id.* at 128:11-14.

[19] *See id.* at 894:14-24.

[20] *See id.* at 894:25-895:3.

Annunziata now argues that the verdict of one dollar is insufficient as a matter of law and requests a new trial on the issue of damages. Defendants move for judgment as a matter of law as to Henn's liability and qualified immunity, and further argue that plaintiff's failure to object to the jury's dismissal constituted a waiver of punitive damages and that the punitive damage award is excessive. In the alternative, defendants move for a new trial on the ground that the verdict is inconsistent and cannot be sustained.

## III. APPLICABLE LAW

### A. Inconsistent Verdicts

"[I]nconsistent special verdict answers raise constitutional concerns because 'proper deference to the parties' Seventh Amendment rights to trial by jury precludes entry of a judgment that disregards any material jury finding.'"[21] "'[T]he proper approach when faced with seemingly inconsistent verdicts is not to credit one finding and vacate the other.'"[22] "In cases 'where the special verdict answers appear to be inconsistent but there is a view of the case that makes the

---

[21] *Munafo v. Metropolitan Transp. Auth.*, 381 F.3d 99, 105 (2d Cir. 2004) (quoting *Tolbert v. Queens Coll.*, 242 F.3d 58, 74 (2d Cir. 2001)).

[22] *Stephenson v. Doe*, 332 F.3d 68, 78 (2d Cir. 2003) (quoting *Harris v. Niagara Mohawk Power Corp.*, 252 F.3d 592, 598 (2d Cir. 2001)).

6

jury's answers consistent, they must be resolved that way.'"²³ "Thus, the Seventh Amendment requires a new trial only where a 'jury's answers cannot be harmonized rationally.'"²⁴

**B.     False Arrest**

The Fourth Amendment provides that "[t]he right of the people to be secure in their persons . . . against unreasonable searches and seizures, shall not be violated . . . ." A seizure of a person that rises to the level of an arrest is unreasonable if it occurs without a warrant unless the arresting officers have probable cause to believe that the person has committed a crime.²⁵ The right to be free from arrest without probable cause is clearly established.²⁶

"'Whether probable cause exists depends upon the reasonable

---

²³     *Munafo*, 381 F.3d at 105 (quoting *Tolbert*, 242 F.3d at 74). *Accord Stephenson*, 332 F.3d at 78 ("[S]eemingly inconsistent verdicts should be reconciled if possible.").

²⁴     *Munafo*, 381 F.3d at 105 (quoting *Brooks v. Brattleboro Mem'l Hosp.*, 958 F.2d 525, 529 (2d Cir. 1992)).

²⁵     *See Devenpeck v. Alford*, 543 U.S. 146, 152 (2004) ("In conformity with the rule at common law, a warrantless arrest by a law officer is reasonable under the Fourth Amendment where there is probable cause to believe that a criminal offense has been or is being committed.") (citing *United States v. Watson*, 423 U.S. 411, 417-24 (1976); *Brinegar v. United States*, 338 U.S. 160, 175-76 (1949)).

²⁶     *See Gilles v. Repicky*, 511 F.3d 239, 247 (2d Cir. 2007).

7

conclusion to be drawn from the facts known to the arresting officer at the time of the arrest.'"[27] Thus, the officers' subjective beliefs as to whether probable cause exists are irrelevant. The inquiry is: Based on the facts known to the arresting officers, would a reasonable officer believe that probable cause exists?[28] "'Probable cause existed if at the moment the arrest was made . . . the facts and circumstances within the [officers'] knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that [the suspect] had violated' the law . . . ."[29]

## IV. DISCUSSION

### A. Directed Verdict

Defendants argue that the uncontradicted evidence indicates that Mitchell told Henn that he saw Annunziata with a firearm, thus providing Henn with probable cause to arrest Annunziata. However, on direct examination, Mitchell testified that Annunziata was not at the crime scene[30] and that Annunziata

---

[27] *Zellner v. Summerlin*, 494 F.3d 344, 369 (2d Cir. 2007) (quoting *Devenpeck v. Alford*, 543 U.S. 146, 152 (2004)).

[28] *See Devenpeck*, 543 U.S. at 153.

[29] *Zellner*, 494 F.3d at 370 (quoting *Hunter v. Bryant*, 502 U.S. 224, 228 (1991)).

[30] *See* Tr. at 265:15-19.

8

did not place a handgun in the car in his yard.[31] On cross-examination, by contrast, defendants' counsel asked the following questions and Mitchell gave the following answers:

> Q: Now, Detective Henn did not make you lie about the dominoes game, right?
>
> A: No, ma'am.
>
> Q: And he did not make you lie about the argument that you heard that brought you out to the street, right?
>
> A: No, ma'am.
>
> Q: He did not tell you to falsely say anything about an abandoned car in your backyard, did he?
>
> A: No, ma'am.
>
> Q: And he did not tell you what kind of gun to say plaintiff was holding, did he?
>
> A: Yes, ma'am.
>
> Q: He did not actually tell you where plaintiff threw that gun, did he?
>
> A: No, ma'am.
>
> Q: And he did not tell you to falsely state what kinds of guns everybody else was carrying that day, did he?
>
> A: No, ma'am.

---

[31] *See id.* at 274:23-275:13.

9

> Q: And he did not tell you anything about a shell casing, did he?
>
> A: No, ma'am.[32]

Defendants argue that this testimony conclusively proves that Mitchell told Henn that Annunziata was carrying a weapon, thus providing probable cause for the arrest. Defendants' reading of this testimony is wishful thinking. Even if it were literally true, Mitchell never identified Annunziata, placed a gun in his hand, or testified that he threw a gun in a car. At best, this testimony directly contradicts Mitchell's testimony on direct examination. The jury was entitled to determine that certain portions of Mitchell's testimony were credible and certain portions were not.[33] The Court cannot grant a directed verdict on the basis of testimony that is contradicted by other testimony from the same witness.[34]

---

[32] *Id.* at 313:4-24.

[33] The jury was instructed that they could consider the consistency of a witness's testimony in evaluating whether to believe that testimony, *see id.* at 853:10-20, and that they were entitled to "accept so much of the witness's testimony as [they] deem true and disregard what [they] feel is false." *Id.* at 854:19-21.

[34] Further, as discussed below, a directed verdict is unavailable because a jury could determine that it was unreasonable for Henn to rely on the testimony of Bruce Mitchell in those circumstances to establish probable cause.

10

**B.   New Trial**

Mitchell testified that Henn coerced him into falsely accusing Annunziata. Had the jury credited this testimony, they would have had to conclude that no probable cause existed for Annunziata's prosecution. That the jury found that there was probable cause for that prosecution demonstrates that they did not believe Henn coerced Mitchell.

But if the jury accepted that Henn did not coerce Mitchell, then no reasonable reading of the evidence explains their finding that Henn lacked probable cause to arrest Annunziata. Disregarding coercion, the uncontroverted evidence indicates that Henn arrested Annunziata based on the corroborated testimony[35] of an eyewitness, Mitchell.[36]

Indeed, the jury was instructed, "if you find that there was no probable cause for plaintiff's arrest, then you must decide that there was no

---

[35]   Mitchell's testimony was corroborated by the discovery of the firearm in the vehicle.

[36]   Generally, the testimony of an identified eyewitness taken at the stationhouse is sufficient to support probable cause absent some indication that the witness was unreliable. *See Panetta v. Crowley*, 460 F.3d 388, 395 (2d Cir. 2006) ("'[I]t is well-established that a law enforcement official has probable cause to arrest if he received his information from some person, normally the putative victim or eyewitness,' unless the circumstances raise doubt as to the person's veracity.") (quoting *Martinez v. Simonetti*, 202 F.3d 625, 634 (2d Cir. 2000)) (citation omitted).

11

probable cause for this criminal prosecution . . . ."[37] Contrary to this instruction, the jury determined that there was no probable cause for the arrest but there was probable cause for the prosecution.

No reasonable reading of the facts presented to the jury supports this verdict. Therefore, the verdict cannot stand. Rule 49(b)(4) of the Federal Rules of Civil Procedure provides that when the jury returns answers that are inconsistent with the verdict and with each other, "the court must direct the jury to further consider its answers and verdict, or must order a new trial." Only the latter option is available at this time. Thus, a new trial as to both false arrest and malicious prosecution is required.

Based on the facts as presented at trial, there is no reason for the Court to reach the question of qualified immunity. A jury could conclude only that Henn coerced Mitchell into giving false testimony, in which case Henn would not be entitled to qualified immunity, or that Mitchell testified as indicated without coercion. If the jury were to conclude that Henn did not coerce Mitchell, they would then determine either that a reasonable officer would have found Mitchell to be credible, in which case Henn had probable cause to arrest Annunziata, or that a reasonable officer would have doubted Mitchell's story under the circumstances,

---

[37] Tr. at 871:12-15.

in which case Henn lacked probable cause. To avoid any possibility of confusion, the Court's verdict sheet will ask the jury to make an explicit finding as to whether Henn coerced Mitchell.

## V. CONCLUSION

For the reasons stated above, the verdict is set aside. A new trial is scheduled for September 15, 2008.[38] The Clerk of the Court is directed to close these motions (documents no. 66 and 70 on the docket sheet).

SO ORDERED:

Shira A. Scheindlin
U.S.D.J.

Dated:   New York, New York
         August 29, 2008

---

[38] In his moving papers, Annunziata indicated that if defendants' motion for a new trial were granted, he would request leave to amend his Complaint pursuant to Rule 15(b)(1) of the Federal Rules of Civil Procedure to add a fabrication of evidence claim. *See* Plaintiff's Reply to Defendants' Opposition to Plaintiff's Post-Trial Motion for a New Trial on Damages for Loss of Liberty at 10. This request is granted only to the extent that the additional claim is based on existing evidence and will not expand the scope of the trial.

13

## - Appearances -

**For Plaintiff:**

Michael Colihan, Esq.
44 Court Street, Room 911
Brooklyn, NY 11201
(718) 488-7788

Michael L. Spiegel, Esq.
111 Broadway, Suite 1305
New York, NY 10006
(212) 587-8558

**For Defendants:**

Prathyusha Bandi Reddy
Sumit Sud
Caryn Anne Rosencrantz
Assistant Corporation Counsel
NYC Law Department
100 Church Street
New York, NY 10007
(212) 788-0303